No. 94,647

In the Matter of GEORGE R. ROBERTSON, District Judge,
*Respondent.*
(120 P.3d 790)

Opinion filed October 7, 2005.

*Edward G. Collister, Jr.,* of Lawrence, argued the cause and was on the brief for the Commission on Judicial Qualifications.

*Stephen E. Robison,* of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, argued the cause, and *Lyndon W. Vix,* of the same firm, was with him on the brief for respondent. *George R. Robertson,* respondent, argued the cause pro se.

*Per Curiam:* This is an original disciplinary proceeding against the Respondent, George R. Robertson, a District Judge of the 28th Judicial District. The Kansas Commission on Judicial Qualifications (Commission) initiated the proceeding and, after conducting a hearing, found that the Respondent violated Canon 1 (2004 Kan. Ct. R. Annot. 539), Canon 2 (2004 Kan. Ct. R. Annot. 539), and Canon 4(A)(2) (2004 Kan. Ct. R. Annot. 549) of the Code of Judicial Conduct, as set out in Rule 601A of the Rules of the Kansas Supreme Court. The Commission's findings of misconduct arise from the Respondent's admitted violation of the 28th Judicial District's administrative order regarding computer and internet usage. The Respondent violated the administrative order when, over an extended period of time, he frequently used the county-owned computer located in his office at the Saline County Courthouse to access and display sexually explicit images, messages, and materials. Based upon this misconduct, five members of the Commission recommended that the Respondent be removed from office; two members dissented and recommended public censure accompanied by suspension without pay for a period of time.

The Respondent takes exception to the Commission's recommendation of removal and asks this court to impose a less severe sanction. In the alternative, the Respondent requests that the matter be remanded to the Commission with instructions that it con-

sider evidence of Respondent's current psychological condition and ability to return to the bench.

## Commission's Findings of Fact

This proceeding began when the Commission received a complaint that Respondent had failed to comply with the Code of Judicial Conduct. Upon receipt of the complaint, the Commission, which is evenly divided into two panels, assigned one panel to conduct an investigation. See Rule 602 (2004 Sup. Ct. R. Annot. 564); Rule 609 (2004 Sup. Ct. R. Annot. 570). The investigating panel concluded there was sufficient cause to institute formal proceedings. As a result, a formal complaint was filed against the Respondent. The Respondent answered the complaint by denying that his conduct constituted a violation of the Code of Judicial Conduct. When the complaint was filed, this court placed the Respondent on paid administrative leave beginning February 9, 2005.

Subsequently, the second panel of the Commission—the panel which did not perform the investigation—conducted a formal hearing. The hearing panel was composed of two nonlawyers, two lawyers, and three judges. Several witnesses, including the Respondent, testified and evidence was presented to the panel. After the hearing, the panel filed written findings of fact, conclusions of law, and recommendations regarding the discipline of the Respondent. The Commission concluded that the following facts were established by clear and convincing evidence:

"1. Administrative Order #40 of the 28th Judicial District approved February 11, 2000, by Chief Judge Daniel L. Hebert, currently renumbered to Administrative Order # 35 by virtue of the delegation of other orders, establishes a uniform policy regarding computer and internet usage by all court staff. Subsection III. B. provides in relevant part: 'Access/display of a transmission/downloading of sexually explicit images, messages or materials of any kind is specifically prohibited.'

"2. In December 2004, Brad Bowers, Director of Computer Technology for Saline County, discovered through use of an application called Symantec Web Security that adult websites were being visited by Judge George Robertson on county-owned equipment utilized by the Judicial Branch in Judge Robertson's office at the Saline County Courthouse during the time period referenced. That information was relayed to county officials.

"3. Twenty-three pages of access information gathered by Mr. Bowers regarding Judge Robertson's internet access between November 2, 2004, and January 26, 2005, were admitted into evidence at the hearing by stipulation.

"4. Judge Robertson admitted that he started looking at adult websites on his office computer in early 2004, which practice continued until discovery by county officials.

"5. Dave Wood, investigator for the Disciplinary Administrator's Office and the Commission on Judicial Qualifications, reviewed the Symantec Web Security Access Report as well as the websites detailed and determined that Judge Robertson had visited numerous pornographic websites repeatedly to access sexually explicit images, messages, or materials.

"6. At the May 25, 2005, hearing, Judge Robertson testified that he knew his internet activity was inappropriate on several levels but that the pressures of his judicial position and his volunteer commitments at his church led him to continue the activity.

"7. At the May 25, 2005, hearing, the Panel received by stipulation evaluations of Judge Robertson written by licensed psychologist Gloria J. Jones and licensed social worker Chris L. McKee. Judge Robertson continues under treatment for depression.

"8. The Panel received by stipulation letters of support written by twenty-three individuals.

"9. The Panel heard testimony from Judges of the 28th Judicial District which detailed Judge Robertson's accomplishments on the bench as well as the 'irreparable harm' caused to the judiciary by his current conduct."

## Commission's Conclusions of Law

Based upon the above facts, the Commission concluded that the Respondent violated Canons 1, 2, and 4A(2) of the Code of Judicial Conduct.

Canon 1 provides:

*"A Judge Shall Uphold the Integrity and Independence of the Judiciary*

"An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved." (2004 Kan. Ct. R. Annot. 539.)

Canon 2 provides, in relevant part:

*"A Judge Shall Avoid Impropriety and the Appearance of Impropriety in All of the Judge's Activities*

"A. A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." (2004 Kan. Ct. R. Annot. 539.)

Canon 4A(2) provides, in relevant part:

"*A Judge Shall so Conduct the Judge's Extra-judicial Activities as to Minimize the Risk of Conflict with Judicial Obligations*

"A. Extra-judicial Activities in General. A judge shall conduct all of the judge's extra-judicial activities so that they do not:

. . . .

(2) demean the judicial office . . . ." (2004 Kan. Ct. R. Annot. 549.)

The Commission further concluded that any evidence offered in mitigation was not sufficient to overcome the Commission's findings. As previously noted, five members of the panel recommended removal from office. Two other members, who felt that the Respondent's conduct was an aberration and not likely to recur, recommended public censure and an unspecified period of suspension without pay.

### Analysis

Respondent did not file exceptions to the Commission's findings of fact and conclusions of law. Consequently, the findings and conclusions are conclusive. Supreme Court Rule 623 (2004 Kan. Ct. R. Annot. 577). We, therefore, find that the Respondent has violated Canon 1, Canon 2, and Canon 4(A)(2) of the Code of Judicial Conduct.

In light of these violations, the court must determine, under the circumstances of the case, what discipline is "deemed proper and just." Supreme Court Rule 623(d). The potential options for discipline are public censure, suspension, or removal from office. Supreme Court Rule 620 (2004 Kan. Ct. R. Annot. 575). The Commission's recommendation of removal from office, to which the Respondent has taken exception, is not binding on the court. See *In re Platt*, 269 Kan. 509, 528, 8 P.3d 686 (2000).

In arguing that his conduct does not justify the sanction of removal which was recommended by the Commission, the Respondent argues that courts should be cautious in removing judges because doing so disrupts the public's choice of who should serve in

the judiciary. He argues that public choice is expressed in retention elections which follow a judge's appointment to office (which is Respondent's situation), just as it is expressed in contested judicial elections. We agree. However, the public has also expressed its choice to have a system of discipline which can result in a judge's removal from office. This choice is expressed in Article 3, § 15 of the Kansas Constitution which provides that a judge "shall be subject to retirement for incapacity, and to discipline, suspension and removal for cause by the supreme court after appropriate hearing." See *In re Yandell*, 244 Kan. 709, 717, 772 P.2d 807 (1989) (retention vote after misconduct occurred may be a mitigating factor, but "such retention certainly does not preclude this court from imposing discipline for respondent's conduct during his prior term").

The Respondent also argues that judges have rarely been removed from office for misconduct and that imposition of such a severe sanction based upon his misconduct would be disproportionate to the sanctions imposed in other Kansas cases and in other jurisdictions. He relies upon Kansas cases involving inappropriate sexual relations or advances as well as nonsexual misconduct cases which he contends involved more egregious misconduct; in these cases the judges were not removed from office. The Respondent also cites decisions from other states where judges who had accessed pornography through court computers were disciplined with suspension or private admonishment. However, as we have noted in attorney discipline cases, "[c]omparison of past sanctions imposed in disciplinary cases is of little guidance. Each case is evaluated individually in light of its particular facts and circumstances and in light of protecting the public." *In re Jones*, 252 Kan. 236, 239, 843 P.2d 709 (1992) (attorney discipline).

As we evaluate the circumstances of a particular case, it is appropriate to consider the extent of the misconduct, the nature of the misconduct, the judge's conduct in response to the Commission's inquiry and disciplinary proceedings, the judge's discipline record and reputation, and the effect the misconduct had upon the integrity of and respect for the judiciary. Gray, Handbook for Members of Judicial Conduct Commissions 15 (American Judica-

ture Society 1999). When these factors are applied in this case, some factors are mitigating while others are aggravating.

Respondent contends the mitigating evidence weighs in favor of a sanction which is less severe than removal. He points out that his conduct was unobtrusive and did not directly involve anyone else. We also note that the Respondent was candid and cooperative during the Commission's inquiry. He acknowledged his misconduct and showed remorse, making apologies to the public, his family, the court, and other judges.

Respondent also presented evidence that he had sought treatment and evaluation for his avoidant behavior, anxiety, and depression. The Respondent testified that these conditions were induced by the stresses placed upon him as a church elder. He explained that he spent from 15-40 hours per week on church activities. These activities included everything from negotiating a lease for a boys facility and dealing with bills and budget matters to teaching classes and visiting people in the hospital. He explained that his viewing of pornographic websites was a form of escape or diversion, but that it did not affect his abilities or performance as a judge. At the time of the Commission hearing, the Respondent was taking medication and was in psychotherapy.

As a final consideration in mitigation, we note that the Chief Judge of the 28th Judicial District testified that during the time period in question, he saw no indication that the Respondent was having any trouble with his judicial responsibilities or difficulty keeping up with the work of his division. Other judges of the 28th Judicial District testified that the Respondent was a capable and fair judge.

Against these mitigating factors there weigh several aggravating factors. First, the misconduct was not isolated. Respondent testified he first began viewing sexually explicit websites around March 2004, 9 months before his conduct was discovered. Once discovered, Saline County officials used an application, Symantec Web Security, to document the time, date, and web address of each adult website viewed by the Respondent. The report, covering the period from November 2, 2004 until January 26, 2005, is 23 pages in length.

A second aggravating factor is that these activities occurred through use of county-owned computer equipment while Respondent was in his courthouse chambers and during official court hours.

Third, the examiner also introduced evidence by stipulation of a prior cease and desist order issued to the Respondent by the Commission on Judicial Qualifications in May 1997. According to the order, the Respondent imposed a probation condition upon a juvenile offender prohibiting that offender from associating with Hispanic males under the age of 21 unless in the company of an adult or unless they were family members. The Commission determined that the Respondent's conduct violated Canons 2(A) (judge shall avoid impropriety or the appearance of impropriety) and 3(B)(5) (judge shall perform duties without bias or prejudice) (2004 Kan. Ct. R. Annot. 542) and ordered the Respondent to cease and desist.

Fourth, the Respondent's conduct showed disrespect for a basic principle which underlies the judicial system: respect for judicial orders. To function effectively as a judicial officer, the Respondent must expect others to follow judicial orders. Yet, to satisfy his own interests, the Respondent violated his own court's administrative order, an order with which all employees of the 28th Judicial District were and are expected to comply. Respondent seeks to set himself apart from the others bound by the administrative order and all other court orders.

Finally, and under the circumstances of this case, the most serious aggravating factor is the effect the misconduct had upon the integrity of and respect for the judiciary. The Preamble to the Kansas Code of Judicial Conduct reminds judges they "must respect and honor the judicial office as a public trust and strive to enhance and maintain confidence in our legal system." Rule 601A (2004 Kan. Ct. R. Annot. 535). Because public trust is essential to an effective judicial system and one judge's conduct may have a significant impact upon the public's perception of the entire judicial system, "[a] judge must avoid all impropriety and appearance of impropriety. A judge must expect to be the subject of constant public scrutiny. A judge must therefore accept restrictions on the

judge's conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly." Canon 2, Commentary (2004 Kan. Ct. R. Annot. 540).

Clearly, the Respondent did not heed these warnings. The result, according to several witnesses who testified at the hearing, is a severe erosion of public confidence. The Chief Judge of the district testified that if the Respondent were to return to the bench, the Chief Judge would have difficulty assigning the Respondent a docket because of the publicity surrounding his misconduct. As the Chief Judge testified, "[I]t would be very difficult to establish public confidence in the judicial [decision]-making capacity when there's been such a severe lapse in . . . judgment." The Respondent's other judicial colleagues testified that the Respondent's misconduct showed a "lack of judgment" and had caused "irreparable harm" and embarrassment to the judiciary.

The aim of judicial discipline "is the maintenance of the honor and dignity of the judiciary and the proper administration of justice rather than the punishment of the individual." *State ex rel. Comm'n on Judicial Qualifications v. Rome,* 229 Kan. 195, 206, 623 P.2d 1307 (1981). This principle directs the outcome in this case.

After carefully reviewing the entire record, a majority of the court concludes that the appropriate sanction is removal from office.

IT IS THEREFORE ORDERED that Judge George R. Robertson be and he is hereby removed from office as District Judge of the 28th Judicial District effective forthwith.

IT IS FURTHER ORDERED that this order be published in the official Kansas Reports and that costs of this action be assessed to the Respondent.

*In re* Robertson

NUSS, J., not participating.

RULON, C.J., assigned.█

LARSON, S.J., assigned.█